127 So.2d 747 (1961)
Mrs. Mary Ann Pernice HARRIS, Plaintiff-Appellee.
v.
Frank Sullivan HARRIS, Defendant-Appellant.
No. 54.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1961.
Rehearing Denied March 29, 1961.
Certiorari Denied May 12, 1961.
E. K. Alexander, DeQuincy, for defendant-appellant.
*748 Joe J. Tritico, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGE and HOOD, JJ.
FRUGE, Judge.
This suit was combined for purposes of trial and appeal with that of Harris v. Harris, Number 55 of this docket. Separate judgments were rendered by the court below in these suits. In the suit styled Mrs. Mary Ann Pernice Harris v. Frank Sullivan Harris, Mrs. Harris (plaintiff therein) sued for alimony for herself. In the suit styled Frank Sullivan Harris v. Mary Ann Harris, Mrs. Harris proceeded by rule against Mr. Harris to show cause why the alimony (for the children) fixed in the original judgment in that suit should not be increased. Mr. Harris has appealed from both judgments of the lower court, awarding and increasing alimony, in these cases. For the companion suit of Harris v. Harris, No. 55, see 127 So.2d 752. Mrs. Harris, appellee, has not answered the appeal, but contends that the trial judge was correct in both judgments.
Appellant, Mr. Frank Harris, and appellee, Mrs. Mary Ann Pernice Harris, were married January 14, 1946. Three children were born of this marriage: Mary Olga, in 1947; Victoria Ann, in 1950; Frank Sullivan, Jr., in 1954. Appellant was granted the divorce based on two years continuous separation on February 5, 1959. Appellee did not appear in the divorce suit. The divorce judgment awarded custody of the three children to appellee, and ordered appellant to pay a monthly alimony for their support of $100. On February 20, 1959, appellee proceeded by rule in a divorce proceedings to have appellant show cause why the alimony award for the children should not be increased from $100 per month to $200 per month. In a separate suit and petition appellee alleged that she was not at fault in the suit for divorce based on the two year separation; that she was "in necessitous circumstances" [insufficient means for her maintenance, LSA-C.C. Art. 160]; and therefore, she was entitled to alimony of the amount of $160 per month and prayed for judgment accordingly. Appellant answered the suit for alimony for his wife alleging that she was at fault and therefore, barred from receiving alimony for herself. He further contends that if appellee was not at fault then she is not "in necessitous circumstances" [insufficient means for her support, LSA-C.C. Art. 160], and furthermore that in view of the judgment of alimony to the children, and his own expenses and salary that he is unable to pay additional alimony. The trial judge found that appellee, Mrs. Harris, was not at fault; she was "in necessitous circumstances" [had not sufficient means for her maintenance, LSA-C.C. Art. 160]; and that appellant, Mr. Harris, could afford to pay alimony to her in the sum of $50 per month. The trial court also increased the alimony for the support of the children from $100 to $120 per month.
The facts are substantially these: Immediately after their marriage in 1946, appellant and appellee moved to Shreveport where appellant operated a liquor store with the financial backing of appellee's brothers; this did not prove to be a success and the project was abandoned, thereupon they returned to DeRidder; appellee's mother and father lived in DeRidder and owned a store, a home and apartments; the apartments are located in the backyard of the main family dwelling of Mrs. Harris' parents; Mr. Harris held several jobs after returning to DeRidder, finally obtaining employment with Cit-Con Oil Corporation, located outside Lake Charles; Mr. Harris commenced to work at Cit-Con in 1953 and is presently employed there; DeRidder is approximately 60-65 miles from Cit-Con or a round-trip of 120 miles; Mr. Harris does not work on a set-shift, but rather works, at different times, on all shifts; he was unable to join a car-pool to and from work because of the varying shift schedule; because of the distance and the fact that he could not join a car-pool from DeRidder to Cit-Con he moved to DeQuincy to be *749 close to Cit-Con; DeQuincy is 25-30 miles from Cit-Con; the move from DeRidder to DeQuincy was with the view of saving money, so that they could meet debts which had accumulated in DeRidder; Mrs. Harris did not move to DeQuincy; two years after Mr. Harris moved to DeQuincy he obtained a divorce based on two years continuous living separate and apart, per LSA-R.S. 9:301, and within a few days of the divorce he remarried.
The first question presented is whether or not Mrs. Harris was at fault. The pertinent provision of our law is embodied in LSA-C.C. Article 160 as follows:
"* * * In cases where, under the laws of this State a divorce is granted solely on the ground that the married persons have been living separate and apart for a certain specified period of time [LSA-R.S. 9:301 and LSA-C.C. Article 138], and the husband has obtained a divorce upon the grounds of such living separate and apart, and the wife has not been at fault, then the court may allow the wife in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income.
"This alimony shall be revocable in case it should become unnecessary, and in case the wife should contract a second marriage." (Brackets supplied.)
The wife who seeks alimony in the above circumstances must prove that she was not at fault, i. e., she has the burden of proving that the separation was not her fault. See Vinot v. Vinot, 239 La. 587, 119 So.2d 474; and Rogers v. Rogers, 239 La. 877, 120 So.2d 462 and cases therein cited. Mr. Harris testified that he moved to DeQuincy in the first instant for economic reasons and to force the issue. He maintains that living in the "back-yard" was intolerable and for that reason wanted to move his family from the premises. He further maintains that his wife, Mrs. Harris, refused to move with him. This is denied by Mrs. Harris who stated that he had been unable to pay their bills, and didn't keep a job too long. Based upon this past experience she reasoned that he would not be able to support them even if they moved. Her mother and father gave them the use of the apartment without paying rent and fed them to a great extent either in their home or by outright gifts of groceries to them. For these reasons Mrs. Harris feared that their move would not better their situation. Nevertheless, she maintains that she and the children begged Mr. Harris to bring them to DeQuincy to live with him, but that he refused. The trial court found that Mrs. Harris was not at fault in the separation. As was stated in the case of Vinot v. Vinot, supra [239 La. 587, 119 So.2d 475]:
"* * * The husband's and the wife's testimony is in hopeless conflict, and although other witnesses testified, they gave no testimony which could resolve this conflict. As the issue is one of fact, this court will not disturb the finding of the trial judge on the question of fault unless that finding is shown by the record to be manifestly erroneous. Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43; Kendrick v. Kendrick [236 La. 34, 106 So.2d 707], supra."
In the Vinot case the trial judge found that the wife had not met her burden of proof. In the case at bar the trial judge found that the wife did meet her burden of proof and that she had shown that she was not at fault. We are unable to say that he erred in his finding, and therefore will not disturb it.
Under LSA-Civil Code Article 160, if the wife was not at fault the court may "in its discretion" award the wife alimony not to exceed one-third of the husband's income, if the wife "has not sufficient means for her maintenance." In the exercise of this discretionary power, as the cases to be cited below show, the court must assess *750 the basic maintenance needs of the wife against the ability of the husband to pay, taking into consideration all the circumstances of each individual case. (For instance, while a second marriage does not lessen the duty of a husband to support his first family, nevertheless it may be a factor in determining his ability to pay alimony, see Fortier v. Gelpi, 195 La. 449, 197 So. 138,[1] including the wise comment, "It is obvious that a judgment condemning a husband to pay alimony in a greater amount than he can afford to pay would be of no practical benefit to his divorced wife," 197 So. 140.)
As we view the circumstances reflected by this record, the wife is undoubtedly shown to be in necessitous circumstances. She has no income; nor is she employed, at least partly due to a claimed arthritic condition. It is true that her father has, since her husband left her, supplied her with the necessities of life; but this circumstance does not excuse the husband from his duty to support his necessitous first wife (Matheny v. Matheny, 205 La. 869, 18 So.2d 324), although it may be available as one of the intertwined circumstances used in the complex task of measuring, as against the husband's ability to pay, the wife's basic needs for maintenance for which the husband is responsible (Matheny case, abovecited; see also Russo v. Russo, 208 La. 17, 22 So.2d 671.)
The record shows that, although her home is furnished without charge for rent, Mrs. Harris has basic monthly monetary charges of $20, together with the need for food and occasional medical care. Undoubtedly her basic maintenance needs justified the trial court's award of $50, and we cannot say the trial court abused its discretion.
We next turn our attention to the ability of Mr. Harris to pay alimony. The usual method, and probably the most effective, employed in determining the income and ability of the ex-husband-father is to consider the gross earnings and subtract therefrom his ordinary and necessary expenses incurred.
In arriving at Mr. Harris' net income, certain expenses are treated as necessary expenses. In the case of Graham v. Graham, 164 La. 726, 114 So. 632, the court considered as necessary expenses items such as the husband's rent, board, clothes, automobile expenses (where necessary) and life insurance premiums. Deductions for social security and withholding taxes and "other necessary expenses" were allowed in Cassagne v. Cassagne, 207 La. 1033, 22 So.2d 559. In Gantz v. Wagner, 188 La. 833, 178 So. 367, the court considered the combined income of the husband-father and that of his second wife in determining the ability of the husband to pay alimony where it was shown that the first wife and children of the first marriage were in necessitous circumstances. And in Pierce v. Pierce, 213 La. 475, 35 So.2d 22, the fact that the second wife worked was considered in determining the ability to pay.
In the case at bar the record discloses that Mr. Harris has a gross income of approximately $500. Withheld from his paycheck each month is the sum of $155.91. This includes $12.06 social security; $42.00 federal withholding tax; $13.12 retirement fund; $13.73 insurance premium; and $75 monthly payment on his car. The payments on his car are treated as necessary expenditures because he is required to drive to work. There are no public transit systems which would provide a practical means of conveyance to and from work. His employer also withholds $28 per month which Mr. Harris states is another necessary expense. However, the record does not disclose what the payment was for except that it is paid on a note on which he was comaker. *751 In the absence of an explanation of what the payment is for we will not classify it as a necessary expense. Hence, Mr. Harris' "take home" pay is approximately $344.09 per month. As stated above Mr. Harris remarried shortly after he obtained his divorce. At the time of the trial the second Mrs. Harris was employed with a monthly "take home" pay of $165. She contributed approximately $50 per month to her father and mother because her father is not able to work. This allows her an income of $115 per month to be applied to the expenses of this marriage. Thus the combined incomes of Mr. Harris and the second Mrs. Harris are $459.09 per month. The ordinary expenses incurred in the second marriage are approximately $285 per month. (Exclusive of the $100 alimony payment for the support of the children of the former marriage.) These expenses include: $55 house rent; $8 for electricity to Cleco; $6 telephone bill; $3 house gas; $75 groceries; a $66 note for household furniture; $35 automobile gasoline; $25 to Great American; and a $12 life insurance premium. After deducting the above expenses we find that there remains approximately $174.09 in the coffers of the family treasury. Appellant and the second Mrs. Harris have embarked on a business enterprise in which they have purchased several television sets. They have placed them in a hospital to be rented to patients at the rate of $1 per day. The testimony shows that this is not a paying proposition. The sets were purchased on time with the expectation that the notes could be paid from revenues derived from the rental of the sets. However, the second Mrs. Harris has had to pay the notes with funds from her salary and the revenues from the rental of the sets. The obligations incurred in this enterprise are such that they have affected Mr. Harris' ability to meet his ordinary expenses which, besides those of his own household, include obligations to pay alimony to his former wife and the dependent children. The expenses of operating this television rental service are not those that are to be considered in calculating his net income for purposes of ability to pay.
We are in full accord with the statement in the case of Laiche v. Laiche, 237 La. 298, 111 So.2d 120, 122:
"* * * Following the divorce, plaintiff had the right to make a new life for himself by remarrying and raising another family and he is not to be penalized for exercising this unquestioned privilege. But he cannot be allowed to employ the cost and the indebtedness he has incurred by reason of his second marriage as a basis for relief from the obligation he owes to the children of the first marriage. Indeed, any voluntary act by a parent which renders it difficult or impossible to perform the primary obligation of support and maintenance of his children cannot be countenanced as a ground for relief, either wholly or partially, from the obligation."
From the above it is readily seen that obligations of the second marriage which interfere with the performance of those of the first marriage must give way or at least be lessened so that the interests of the first will not be derogated.
We next address our attention to the task of determining the adequacy of the judgment awarding alimony for the support of the children of the first marriage. As mentioned above an insurance premium for the children and their mother in the amount of $9 per month is paid by the former Mrs. Harris. Approximately one-half thereof is treated as the part paid for the insurance of the children. The oldest child, aged 13 or 14, requires special shoes costing approximately $15 per pair. Estimating that she requires four pair per year this amounts to $60 per year. The youngest child, aged six or seven, requires corrective shoes costing approximately $20 per pair. Assuming that he requires four pair a year this is a cost of $80. Two of the children take music lessons. Mr. Harris agrees that they should take them and in *752 fact originally recommended that they do so. The record discloses that the monthly cost thereof is approximately $20 or a total of $240 per year. Two of the children attend school. The cost of lunches and milk for them averages $1.60 per week and based on a 36-week school year this costs $54.60 per school year. School insurance and supplies cost about $10 per year for both children. Medical bills in the amount of $58.50 are in the record. These are the sole estimates in the record of the cost of supporting the children. No estimate of cost of food, clothing and shelter for them has been included in the record. The trial judge allowed $120 per month for the support of the children. On a twelve month basis this would be an income of $1,440. After deducting the above enumerated expenses there is approximately $1,000 remaining to provide food, clothing and shelter. In view of the facts and circumstances of this case we cannot say that the trial judge erred in increasing the award from $100 to $120 per month.
In view of the circumstances surrounding the financial situation of all concerned we have endeavored to do justice between the parties, however, we have not attempted to delineate a criteria by which alimony may be determined in future cases, i. e., no sacro-sanct rule has been enunciated hereby, but rather a reasonable approach to the matter at hand has been attempted. And it is well to keep in mind that each case that deals with alimony must, of necessity, be determined on its own facts and circumstances, and the result of one case will not necessarily control that of another due to differing factual situations. Moreover, LSA-C.C. Article 232 provides that
"When the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted."
See Wilson v. Wilson, 205 La. 196, 17 So.2d 249; Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226; Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398.
The total support and alimony that appellant will have to pay per month will be $170. In view of the fact that appellant and the second Mrs. Harris will have sufficient funds per month after deductions and necessary expenses we feel that $170 for alimony and support of the former Mrs. Harris $50 and the children $120 is adequate.
In view of the foregoing the judgment ordering alimony to be paid appellee at $50 per month is affirmed. Costs to be paid by appellant.
Affirmed.

On Application for Rehearing.
Rehearing denied, en Banc.
NOTES
[1] Laiche v. Laiche, 237 La. 298, 111 So.2d 120, holds, however, that the parent's duty to support his children, (which is not a matter for judicial discretion, LSA-C.C. Art. 227) is not lessened by such second marriage.